```
                    UNITED STATES DISTRICT COURT
                       DISTRICT OF NEW JERSEY
```

---

LORRAINE GIACOBBE and JOANNE   No. 1:14-cv-6387 (NLH/KMW)
WAKEFIELD,
                               **OPINION**
        Plaintiffs,

     v.

QBE SPECIALTY INSURANCE
COMPANY,

        Defendant.

---

**APPEARANCES**:

RICHARD J. GUSS
ANDREW W. MILLER
DIFRANCESCO BATEMAN COLEY YOSPIN KUNZMAN DAVIS & LEHRER
15 MOUNTAIN BOULEVARD
WARREN, NJ 07059-6327
    On behalf of Plaintiffs

CHRISTIAN ANDREW CAVALLO
RONALD D. PUHALA
DAVIS J. KIM
GOLDBERG SEGALLA, LLP
902 CARNEGIE CENTER
SUITE 100
PRINCETON, NJ 08540
    On behalf of Defendant

CHRISTOPHER RYAN WEISS
GOLDBERG SEGALLA, LLP
1037 RAYMOND BLVD.
SUITE 1010
NEWARK, NJ 07102
    On behalf of Defendant

**HILLMAN, District Judge**

This is a breach of contract action involving payment under a homeowner's insurance policy following damage to Plaintiffs Lorraine Giacobbe and Joanne Wakefield's property after Superstorm Sandy. Before the Court is Defendant QBE Specialty Insurance Company's Motion for Summary Judgment. For the reasons that follow, the Court will grant Defendant's Motion.

**I.**

Plaintiffs are the owners of property located at 25 Pilot Road in Toms River, New Jersey. Defendant issued Plaintiffs a homeowner's insurance policy, which provided coverage for wind damage ("the Policy"). Following damage to the property from Superstorm Sandy, Defendant's adjusting company determined that the insured loss was $3,893.98.

Plaintiffs filed their Complaint with this Court on October 15, 2014. Plaintiffs' Complaint brings four counts against Defendant: breach of contract (Count I), breach of the implied covenant of good faith and fair dealing (Count II), bad faith (Count III), and violation of the New Jersey Consumer Fraud Act (Count IV). By way of a Partial Stipulation of Dismissal with Prejudice, filed with the Court on October 23, 2017, Count II, Count III, and Count IV were dismissed with prejudice, leaving only Count I – the breach of contract claim.

**II.**

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332. Plaintiffs are citizens of New Jersey. Defendant is an Australian corporation with its principal place of business in New York. Accordingly, there is diverse citizenship between the parties. As it appears the parties agree that at the time of the filing of the Complaint the amount in controversy exceeded $75,000, exclusive of interest and costs, this Court has diversity jurisdiction.[1]

**III.**

Summary judgment is appropriate where the Court is satisfied that "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits if any,' . . . demonstrate the absence of a genuine issue of material fact" and that the moving party is entitled to a judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986) (citing Fed. R. Civ. P. 56).

An issue is "genuine" if it is supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the

---

[1] The Complaint alleges that the Defendant breached the terms of the Policy by underpaying Plaintiffs in excess of $145,000.

3

outcome of the suit. Id. "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" Marino v. Indus. Crating Co., 358 F.3d 241, 247 (3d Cir. 2004) (citing Anderson, 477 U.S. at 255).

Initially, the moving party bears the burden of demonstrating the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323 ("[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."); see Singletary v. Pa. Dep't of Corr., 266 F.3d 186, 192 n.2 (3d Cir. 2001) ("Although the initial burden is on the summary judgment movant to show the absence of a genuine issue of material fact, 'the burden on the moving party may be discharged by "showing" – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case' when the nonmoving party bears the ultimate burden of proof." (citing Celotex, 477 U.S. at 325)).

Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial. Celotex, 477 U.S. at 324. A "party opposing summary judgment 'may not rest upon the mere allegations or denials of the . . . pleading[s].'" Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001). For "the non-moving party[] to prevail, [that party] must 'make a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial.'" Cooper v. Sniezek, 418 F. App'x 56, 58 (3d Cir. 2011) (citing Celotex, 477 U.S. at 322). Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party. Anderson, 477 U.S. at 257.

## IV.

"To state a claim for breach of contract under New Jersey law, the plaintiff must allege facts demonstrating '(1) a contract; (2) a breach of that contract; (3) damages flowing therefrom; and (4) that the [plaintiff] performed [his] own contractual duties.'" Faistl v. Energy Plus Holdings, LLC, No. 12-2879, 2012 WL 3835815, at *7 (D.N.J. Sept. 4, 2012); accord Sheet Metal Workers Int'l Ass'n Local Union No. 27 v. E.P. Donnelly, Inc., 737 F.3d 879, 900 (3d Cir. 2013).

The main dispute in this motion concerns the method of calculating an insured loss under the Policy. More specifically, the parties dispute whether Plaintiffs are entitled to replacement value or actual cash value. The first prong of Defendant's summary judgment motion is the argument that the Policy only allows for recovery of the actual cash value under the circumstances of this case. Plaintiffs argue they are entitled to the replacement value.

**A. Whether Plaintiffs are entitled to actual cash value or replacement value under the Policy.**

A court's interpretation of an insurance policy "is a question of law." Ramara, Inc. v. Westfield Ins. Co., 814 F.3d 660, 674 (3d Cir. 2016). "Since insurance policies are considered contracts and contract interpretation is generally a question of law, [courts] apply ordinary principles of contract law." Dunkerly v. Encompass Ins. Co., No. 16-8439, 2017 WL 4891529, at *2 (D.N.J. Oct. 27, 2017) (quoting Transamerican Office Furniture v. Travelers Prop. & Cas., 222 F. Supp. 2d 689, 691 (E.D. Pa. 2002)). While "in a particular case the interpretation may depend on underlying disputed facts," id., here, as an initial matter, the parties dispute the legal consequences of the policy language governing the calculation of loss under the Policy. Accordingly, the Court may resolve this issue as a matter of law.

Plaintiffs argue: "The Plaintiffs' measure of damages under the policy is the replacement cost of the damages to their home, not Actual Cash Value." They argue "the issue of their state of repair is irrelevant." Plaintiffs do not direct the Court's attention to any portion of the Policy in making this argument to the Court.[2] In contrast, Defendant sets forth the relevant provision of the Policy as set forth below.

More specifically, the Policy provides:

Covered property losses are settled as follows:

. . . .

2. Buildings covered under Coverage A or B at replacement cost without deduction for depreciation subject to the following:

   a. If, at the time of loss, the amount of insurance in this policy on the damaged building is 80% or more of the full replacement cost of the building immediately before the loss, we will pay the cost to repair or replace, after application of any deductible and without

---

[2] Plaintiffs appear to argue that Defendant concedes this point in that Defendant's brief states that "[t]he QBE policy is a replacement cost policy." However, Plaintiffs take Defendant's statement out of context. Defendant argues, in full: "While the QBE policy is a replacement cost policy, QBE is not obligated to pay Replacement Cost Value for a covered loss until the insured, i.e., Plaintiffs actually repair or replace the covered property damage. Unless repairs are completed, QBE is only obligated to pay Actual Cash Value." As the Court sets forth below, the plain language of the Policy makes clear that the Policy covers replacement costs under some circumstances and only pays actual cost value in other circumstances. Plainly, characterizing the Policy as one form of policy or another is a fact specific inquiry.

7

deduction for depreciation, but not more than the least of the following amounts:

(1) The limit of liability under this policy that applies to the building;

(2) The replacement cost of that part of the building damaged with material of like kind and quality and for like use; or

(3) The necessary amount actually spent to repair or replace the damaged building. If the building is rebuilt at a new premises, the cost described in (2) above is limited to the cost which would have been incurred if the building had been built at the original premises.

b. If, at the time of loss, the amount of insurance in this policy on the damaged building is less than 80% of the full replacement cost of the building immediately before the loss, we will pay the greater of the following amounts, but not more than the limit of liability under this policy that applies to the building:

(1) The actual cash value of that part of the building damaged; or

(2) That proportion of the cost to repair or replace, after application of any deductible and without deduction for depreciation, that part of the building damaged, which the total amount of insurance in this policy on the damaged building bears to 80% of the

>               replacement cost of the building.
>
>        . . . .
>
>     d.  <u>We will pay no more than the actual cash value of the damage until actual repair or replacement is complete. Once actual repair or replacement is complete, we will settle the loss as noted in 2.a. and b. above.</u>
>
>         However, if the cost to repair or replace the damage is both:
>
>         (1) Less than 5% of the amount of insurance in this policy on the building; and
>
>         (2) Less than $2,500;
>
>         We will settle the loss as noted in 2.a. and b. above whether or not actual repair or replacement is complete.[3]

(emphasis added).

The Third Circuit has succinctly set forth the analysis this Court is to apply in interpreting an insurance policy:

> Under New Jersey law, an insurance policy "is simply a contract and its provisions should, of course be construed as in any other contract." As is the case with other types of contracts, an insurance policy "is to be governed by its own terms without recourse to other documents unless its own language so requires." In the absence of any ambiguity, the terms of an insurance policy should "be given their plain, ordinary meaning."
> Ambiguity exists "where the phrasing of the policy is so confusing that the average policyholder cannot make out the boundaries of coverage." New Jersey caselaw "does not require that we credit every conceivable deconstruction of contractual language," but rather

---

[3] This provision does not appear to apply since Plaintiffs seek more than $2,500.

> instructs that "the 'doctrine of ambiguity' should be invoked only to resolve 'genuine' ambiguities, not 'artificial' ambiguities created by 'semantical ingenuity.'" Determining whether genuine ambiguity is present in an insurance policy requires interpreting the policy "as a whole, by giving a reasonable meaning to its form and cast."

Royal Ins. Co. of Am. v. KSI Trading Corp., 563 F.3d 68, 73-74 (3d Cir. 2009) (citations omitted) (first quoting Pennbarr Corp. v. Ins. Co. of N. Am., 976 F.2d 145, 151 (3d Cir. 1992); then quoting Herbert L. Farkas Co. v. N.Y. Fire Ins. Co., 76 A.2d 895, 897 (N.J. 1950); then quoting Zacarias v. Allstate Ins. Co., 775 A.2d 1262, 1264 (N.J. 2001); then quoting Weedo v. Stone E-Brick, Inc., 405 A.2d 788, 795 (N.J. 1979); then quoting A & S Fuel Oil Co. v. Royal Indem. Co., 652 A.2d 1236, 1237-38 (N.J. Super. Ct. App. Div. 1995)); and then quoting Arrow Indus. Carriers, Inc. v. Cont'l Ins. Co. of N.J., 556 A.2d 1310, 1314 (N.J. Super. Ct. App. Div. 1989)).

The Court does not find any ambiguity in the policy language. It is clear to the Court based on the language of the Policy quoted above that Plaintiffs' insured losses are limited to actual cash value prior to the completion of any repairs. Under the plain terms of the Policy, only after repairs are completed do the replacement cost procedures and coverages apply. Plaintiffs have not supplied an alternate interpretation of this language. As with the court in Dunkerly, the Court finds the policy language is "clear and non-technical," it is

"not encumbered by complexities," and it does "not contradict the understanding of an average purchaser." 2017 WL 4891529, at *3-4.

In Plaintiffs' Response to Defendant's Statement of Undisputed Material Facts, it is asserted that "Plaintiffs have done work toward repairing their home as exhibited in the photos of the Cook report. (See Exhibit S). The home has not been fully repaired as QBE failed to fully compensate the Plaintiffs for all the covered damages under the QBE policy."[4] Absent the completion of repairs, a state of affairs the Plaintiffs admit, the replacement cost procedures do not apply, and Plaintiffs are only entitled to actual cash value.

**B. Plaintiffs' burden to prove damages as an element of their breach of contract claim.**

The second prong of Defendant's summary judgment motion is that Plaintiffs have failed to offer sufficient proof of damages. Plaintiffs focus on "Section I – Conditions," which includes the insured's duties after loss. Among them is to send to Defendant a "signed, sworn proof of loss" including "[s]pecifications of damaged buildings and detailed repair estimates." Plaintiffs argue it is "not a duty of the insured under the terms of the policy" to "make a calculation of the

---

[4] Shannon Cook is an expert retained by Plaintiffs in this litigation.

11

Actual Cost Value of the damages to their home." Plaintiffs argue "[t]he policy clearly does not create a duty on the Plaintiffs to establish the Actual Cost Value of their claim as part of their recovery."

Plaintiffs' reliance on this portion of the Policy is misplaced and misapprehends their burden at summary judgment. The issue is not what requirements the Policy places on an insured to begin or perfect a claim. The issue is what a plaintiff must show in response to a motion for summary judgment on her breach of contract claim. A plaintiff bringing a breach of contract claim under New Jersey law has the burden of proof for all elements of the claim, including damages. Murphy v. Implicito, 920 A.2d 678, 689 (N.J. Super. Ct. App. Div. 2007) ("To establish a breach of contract claim, a plaintiff has the burden to show . . . that the plaintiff sustained damages . . . ."); accord Hayes v. Wal-Mart Stores, Inc., 725 F.3d 349, 359 n.7 (3d Cir. 2013); Peck v. Donovan, 565 F. App'x 66, 69-70 (3d Cir. 2012); Adler Eng'rs, Inc. v. Dranoff Props., No. 14-0921, 2016 WL 528160, at *5 (D.N.J. Feb. 9, 2016); Santone-Galayda v. Wachovia Mortg., No. 10-1065, 2010 WL 5392743, at *15 (D.N.J. Dec. 22, 2010); Datasphere, Inc. v. Comput. Horizons Corp., No. 05-2717, 2009 WL 2132431, at *6 (D.N.J. July 13, 2009).

"It is well settled in New Jersey that the plaintiff bears the burden of proving beyond uncertainty that he has in fact been damaged, and once that has been established the plaintiff bears the burden of proving the amount of such damages with a reasonable degree of certainty." Lightning Lube v. Witco Corp., 802 F. Supp. 1180, 1194 (D.N.J. 1992); accord Caro Assocs. II, LLC v. Best Buy Co., No. 09-907, 2012 WL 762304, at *6 (D.N.J. Mar. 6, 2012) ("Proof of damages is essential to a breach of contract claim, and [the plaintiff] has the burden of proof as to that element." (citation omitted) (first citing Gazarov v. The Diocese of Erie, 80 F. App'x 202, 206 (3d Cir. 2003); and then citing Video Pipeline, Inc. v. Buena Vista Home Entm't, Inc., 275 F. Supp. 2d 543, 566 (D.N.J. 2003))).

Here, as the Court noted above, the obligation to complete repairs prior to accruing a claim for replacement costs limits Plaintiffs, as a matter of contract, to the actual cash value of the damage to their property. However, Plaintiffs have offered no proof of actual damages on that claim. In the deposition of Plaintiffs' proffered expert Shannon Cook on October 13, 2017, Cook admitted no expert opinion on actual cash value has been offered. [Ex. T, p. 147]. In its Statement of Undisputed Material Facts, Defendant states: "The Second Cook Report does not contain any opinion by Cook concerning the actual cash value of the damage to the Property allegedly caused by wind from

Super Storm Sandy."  Plaintiffs' response candidly admits: "[T]he . . . Cook [expert] Report does not contain an opinion by Cook of the actual cash value of the damage to the property allegedly caused by the wind from Super Storm Sandy."[5]

The Court finds Plaintiffs have failed to offer sufficient evidence to create a dispute as to a material fact – i.e., the amount of actual cash value of damage to the insured property Defendant has failed to pay.  It is clear to the Court that Cook has not proffered any calculations of the actual cash value, and Plaintiffs' briefing does not indicate any other source of this information.  Absent such evidence, Plaintiffs have failed to offer sufficient evidence as to an essential element of its breach of contract claim – namely that they have been damaged.  Accordingly, the Court will grant Defendant's Motion for Summary Judgment.[6]

An appropriate Order will be entered.


Date: May 8, 2018                   s/ Noel L. Hillman
At Camden, New Jersey               NOEL L. HILLMAN, U.S.D.J.

---

[5]  Cook is one of two experts used by Plaintiffs in this litigation.  Plaintiffs do not argue the other expert, Frank Bennardo, supplies any evidence as to actual cash value.

[6]  In light of this disposition of Defendant's motion, the Court need not address Defendant's alternative argument that the Court should disregard Cook's report because it relies on evidence deemed inadmissible by the Magistrate Judge assigned to this matter.

14