---

LORRAINE GIACOBBE and JOANNE    No. 1:14-cv-6387 (NLH/KMW)
WAKEFIELD,

           Plaintiffs,    **OPINION**

     v.

QBE SPECIALTY INSURANCE
COMPANY,

          Defendant.

---

<u>**APPEARANCES**</u>:

RICHARD J. GUSS
MARTIN L. MAYO
ANDREW W. MILLER
DIFRANCESCO BATEMAN COLEY YOSPIN KUNZMAN DAVIS & LEHRER
15 MOUNTAIN BOULEVARD
WARREN, NJ 07059-6327
    On behalf of Plaintiffs

CHRISTIAN ANDREW CAVALLO
RONALD D. PUHALA
DAVIS J. KIM
GOLDBERG SEGALLA, LLP
902 CARNEGIE CENTER
SUITE 100
PRINCETON, NJ 08540
    On behalf of Defendant

CHRISTIAN A. CAVALLO
PATRICK J. MULQUEEN
CHRISTOPHER RYAN WEISS
GOLDBERG SEGALLA, LLP
1037 RAYMOND BLVD.
SUITE 1010
NEWARK, NJ 07102
    On behalf of Defendant

**HILLMAN, District Judge**

This is a breach of contract action involving payment under a homeowner's insurance policy following damage to Plaintiffs Lorraine Giacobbe and Joanne Wakefield's property after Superstorm Sandy. Before the Court is Plaintiff's Motion for Reconsideration of the Court's Opinion and Order granting summary judgment in favor of Defendant QBE Specialty Insurance Company. For the reasons that follow, the Court will deny the Motion for Reconsideration.

**I.**

Plaintiffs are the owners of property located at 25 Pilot Road in Toms River, New Jersey. Defendant issued Plaintiffs a homeowner's insurance policy, which provided coverage for wind damage ("the Policy"). Following damage to the property from Superstorm Sandy, Defendant's adjusting company determined that the insured loss was $3,893.98.

Plaintiffs filed their Complaint with this Court on October 15, 2014 bringing four counts against Defendant. Following a Partial Stipulation of Dismissal, only the breach of contract claim remained. On May 8, 2018, the Court granted summary judgment in favor of Defendant. On May 21, 2018, Plaintiffs moved for reconsideration of that decision.[1]

---

[1]    This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332.

**II.**

The purpose of a motion for reconsideration "is to correct manifest errors of law or fact or to present newly discovered evidence." Max's Seafood Cafe ex rel. Lou-Ann, Inc. v. Quinteros, 176 F.3d 669, 677 (3d Cir. 1999). A judgment may be altered or amended only if the party seeking reconsideration shows: (1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court rendered its decision; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice. Id.

"A decision suffers from 'clear error' only if the record cannot support the findings that led to that ruling." Bond v. Ingersoll-Rand Co., No. 08-3487, 2010 WL 5139857, at *4 (D.N.J. Dec. 10, 2010) (quoting United States v. Grape, 549 F.3d 591, 603-04 (3d Cir. 2008)). "Thus, a party must do more than allege that portions of a ruling were erroneous in order to obtain reconsideration of that ruling; it must demonstrate that (1) the holdings on which it bases its request were without support in the record, or (2) would result in 'manifest injustice' if not addressed." Id. (quoting Grape, 549 F.3d at 603-04; N. River Ins. Co. v. CIGNA Reins. Co., 52 F.3d 1194, 1218 (3d Cir. 1995)). "In this context, the term 'manifest injustice' 'means that the Court overlooked some dispositive factual or legal matter that was presented to it.'" Barton v. Mid-Atl. Flooring

Ventures Inc., No. 13-4592, 2017 U.S. Dist. LEXIS 4648, at *14

(D.N.J. Jan. 12, 2017) (quoting Rose v. Alt. Ins. Works, LLC,

No. 06-1818, 2007 U.S. Dist. LEXIS 64622, at *1 (D.N.J. Aug. 31,

2007)).

A motion for reconsideration may not be used to re-litigate

old matters or argue new matters that could have been raised

before the original decision was reached.  P. Schoenfeld Asset

Mgmt., L.L.C. v. Cendant Corp., 161 F. Supp. 2d 349, 352 (D.N.J.

2001).  Mere disagreement with the Court will not suffice to

show that the Court overlooked relevant facts or controlling

law, United States v. Compaction Sys. Corp., 88 F. Supp. 2d 339,

345 (D.N.J. 1999), and should be dealt with through the normal

appellate process, S.C. ex rel. C.C. v. Deptford Twp. Bd. of

Educ., 248 F. Supp. 2d 368, 381 (D.N.J. 2003).

**III.**

The Court's May 2018 Opinion found that the Policy clearly

and unambiguously allowed for recovery of only the actual cash

value under the circumstances of the case, as opposed to

replacement value, as Plaintiffs argued:

> The Court does not find any ambiguity in the policy
> language.  It is clear to the Court based on the language
> of the Policy quoted above that Plaintiffs' insured
> losses are limited to actual cash value prior to the
> completion of any repairs.  Under the plain terms of the
> Policy, only after repairs are completed do the
> replacement cost procedures and coverages apply.
> Plaintiffs have not supplied an alternate interpretation
> of this language. . . .  Absent the completion of

> repairs, a state of affairs the Plaintiffs admit, the
> replacement cost procedures do not apply, and Plaintiffs
> are only entitled to actual cash value.

(footnote omitted).  The Court thereafter concluded that summary

judgment was appropriate because Plaintiffs did not offer any

proof of actual cash damages and thus failed to satisfy an

essential element of their breach of contract claim.

In Plaintiffs' moving brief, they recognize the limited

nature of a motion for reconsideration, and the narrow

circumstances that warrant granting such a motion.  However,

Plaintiffs' motion fails to show such circumstances exist here.

Plaintiffs concede "there is no intervening change in law or

newly available evidence."  However, significantly, they do not

cite any case law or fact the Court neglected to consider in its

summary judgment decision.  In their Preliminary Statement,

Plaintiffs argue "the Court erred in granting the defendant's

motion because the end result is simply unfair, fundamentally

wrong, and constitutes a manifest injustice to those individuals

who were without financial means to repair their homes as a

result of Super Storm Sandy."  However, Plaintiffs point to no

basis in law or fact to justify the Court revisiting its

decision.

Plaintiffs argue the Court "ignore[d] the plain language of

the policy," and then merely provide a hypothetical which

purports to show the "illogical results" of the Court's decision

based on an argument that the Court's interpretation favors the rich over the poor. It is, of course, true that those with more financial resources will find it easier to meet the requirements of the policy at issue here that requires repairs be completed before a claim of replacement cost value may accrue, but that does not alter the plain language of the policy the Plaintiffs purchased. Plaintiffs do not pinpoint what "plain language" in the Policy the Court ignored. Rather, they want the Court as a matter of "fairness" to rewrite the bargain struck by the parties by reading out of the contract a provision they agreed to and now do not like because it limits their claim of damages. That the Court cannot do.

As to proving damages, Plaintiffs argue they can prove Defendant incorrectly calculated the replacement cost and that "[i]t is not necessary to show the actual amount of Actual Cash Value," since the actual cash value "is predicated on a correct RCV." However, proving that Defendant's calculation is wrong is not equivalent to Plaintiffs proving their damages. Even if replacement cost value and actual cash value are linked, Plaintiffs still had an obligation at summary judgment to offer enough proof from which a jury could determine a measure of damages greater than the amount of actual cost value already paid by the Defendant. Having placed all their eggs in the replacement cost value basket, their failure to do so rendered

summary judgment for the Defendant not only appropriate but

required.

     The Court will deny Plaintiffs' Motion for Reconsideration.

An appropriate Order will be entered.


Date:  August 28, 2018         s/ Noel L. Hillman     
At Camden, New Jersey         NOEL L. HILLMAN, U.S.D.J.